*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

UNPUBLISHED
April 30, 2020

v

THOMAS JAMES MARTIN,

   Defendant-Appellant.

No. 344884
Wayne Circuit Court
LC No. 17-008679-01-FC

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

ARTHUR LEE ROSEMOND,

   Defendant-Appellant.

No. 346035
Wayne Circuit Court
LC No. 17-008083-01-FC

Before: M. J. KELLY, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

  In Docket No. 344884, defendant Thomas Martin appeals as of right his jury trial convictions of first-degree premeditated murder, MCL 750.316(1)(a), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. The trial court sentenced Martin to life imprisonment without parole for the murder conviction and three to five years in prison for the felon-in-possession conviction, to be served concurrently, but consecutive to a two-year term of imprisonment for the felony-firearm conviction. In Docket No. 346035,[1] defendant Arthur Rosemond appeals as of right his

---

[1] For efficiency purposes, the appeals were consolidated. *People v Martin*, unpublished order of the Court of Appeals, entered February 1, 2019 (Docket No. 344884).

jury trial conviction of a single count of first-degree premeditated murder. The court also sentenced Rosemond to life imprisonment without parole. We affirm in both appeals.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On June 14, 2017, Markeith Howard was shot 11 times at approximately 1:20 a.m. as he arrived at his home on Artesian Street in Detroit. Neighbors heard gunfire and called the police. They observed three men running from the scene. Howard survived for approximately five weeks before he died from his injuries. At the scene, Howard told responding officers that he was shot by "Jay," which is Rosemond's nickname. The statement was captured on an officer's body camera. Rosemond lived near Howard.

The prosecution's theory of the case was that Howard was shot in retaliation for an earlier shooting. Earlier that month, Rosemond was shot at a gathering on Lauder Street. The prosecution presented evidence that both Martin and Donzell Barrow shot Howard. Martin gave a custodial statement admitting his involvement in the shooting, but he argued at trial that the officer who interviewed him coerced his confession and helped him fabricate the statement. It was the prosecutor's theory that Rosemond either was at a nearby hotel at the time of the shooting and was guilty as an aider or abettor, or that he was the third man involved in the shooting and was guilty as a principal. Rosemond presented an alibi defense, claiming that he was with Tiffany Bass at the Redford Inn at the time of the shooting, and that there was no evidence that he directed or encouraged Martin to shoot Howard.

In April and May 2018, Martin and Rosemond were tried jointly, before separate juries. Martin's jury convicted him of first-degree murder, felon in possession of a firearm, and felony-firearm. Rosemond's jury was unable to reach a verdict and the trial court declared a mistrial. Rosemond was retried in September 2018, and convicted of a single count of first-degree murder. These appeals followed.

## II. DOCKET NO. 344884 (MARTIN)

### A. ISSUES RAISED BY APPELLATE COUNSEL

#### 1. SUBSTITUTE COUNSEL

Martin argues that the trial court erred by failing to personally question Martin to determine why he wanted substitute counsel appointed, and instead deferred solely to appointed counsel. We disagree.

The determination whether substitution of appointed counsel is appropriate is in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991). We also review for an abuse of discretion a trial court's decision affecting a defendant's right to counsel of choice. *People v Akins*, 259 Mich App 545, 556; 675 NW2d 863 (2003). "When a defendant asserts that the defendant's assigned attorney is not adequate or diligent, or is disinterested, the trial court should hear the defendant's claim and, if there is a factual dispute, take testimony and state its findings and conclusion on the record." *People v Bauder*, 269 Mich App 174, 193; 712 NW2d 506 (2005),

-2-

overruled in part on other grounds by *People v Burns*, 494 Mich 104, 112-113; 832 NW2d 738 (2013).

Early in the case, Martin's appointed counsel advised the trial court that Martin was not satisfied with counsel and may want to retain counsel or ask for new appointed counsel. The trial court questioned appointed counsel to determine whether he believed he could continue to represent Martin, and counsel requested additional time to review discovery materials and to meet with Martin. Contrary to what Martin asserts, the trial court did not solely defer to appointed counsel, but also questioned Martin to determine if he wanted to retain counsel or request new appointed counsel. Martin did not express any dissatisfaction with appointed counsel, indicate that he intended to retain counsel, or ask the court to appoint new counsel. Rather, he stated that he would like to discuss the matter with his family, but explained that he had been unable to do so because of restrictions that had been placed on him at the jail. This exchange demonstrates that the court properly investigated whether Martin was dissatisfied with appointed counsel, and that good cause for appointing new counsel did not then exist.

Furthermore, when Martin expressed that he wanted to discuss the matter with his family first, and expressed frustration that restrictions at the jail were preventing him from doing so, the trial court acted promptly to ensure that Martin would be able communicate with his family for this purpose. The court also indicated that it would reconsider the issue in the future, after Martin had an opportunity to speak with his family. At a later hearing, Martin's counsel informed the court that he and Martin were now communicating and having civil conversations. There were no indications that Martin was dissatisfied with counsel or wanted new counsel. Martin never made a proper request for new counsel, and the record does not support Martin's claim that the trial court erred by failing to adequately inquire whether new counsel was necessary.[2]

## 2. MARTIN'S STATEMENT

Martin next argues that the trial court erred by denying his motion to suppress his custodial statement. We disagree.

At an evidentiary hearing, Investigator Ira Todd admitted making false statements during his interrogation of Martin, including that the police had a video recording showing Martin's involvement in the shooting and that an accomplice had implicated him. He also acknowledged offering to advocate for Martin with the prosecutor's office. Martin gave a statement admitting his involvement in the shooting of Howard. The trial court found that Martin's statement was not

---

[2] Defendant briefly states that this failure to inquire into whether he wanted substitute counsel also left an inadequate record regarding whether he was forced to seek retained counsel and whether he had sufficient means to do so. This issue was not properly raised in the statement of questions presented. *People v Unger*, 278 Mich App 210, 262; 749 NW2d 210 (2008). However, in addition to questioning Martin's jail restrictions on communications and visitation, the trial court also examined the police retention of money and jewelry that impacted Martin's ability to retain new counsel. Thus, the record does not support this claim.

the product of improper promises of leniency by Investigator Todd, and was not otherwise rendered involuntary by Investigator Todd's false statements.

"On appeal from a ruling on a motion to suppress evidence of a confession, deference must be given to the trial court's findings." *People v Kowalski*, 230 Mich App 464, 471-472; 584 NW2d 613 (1998). We review the record de novo, but any factual findings by the trial court will not be disturbed unless they are clearly erroneous. *Id*. at 472. Clear error exists when this Court is left with a definite and firm conviction that a mistake has been made. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008). We also review de novo the question of voluntariness. *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005).

Both the state and federal constitutions guarantee the right against self-incrimination. US Const, Am V; Const 1963, art 1, § 17. In general, statements made by an accused while subject to custodial interrogation are not admissible unless, prior to questioning, the accused is warned (1) he has a right to remain silent, (2) his statements could be used against him, and (3) he has the right to counsel. The accused must have voluntarily, knowingly, and intelligently waived his rights. *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Whether a defendant's statement was voluntary is determined by examining the conduct of the police. *Tierney*, 266 Mich App at 707. "[T]he voluntariness prong cannot be resolved in defendant's favor absent evidence of police coercion or misconduct." *People v Howard*, 226 Mich App 528, 543; 575 NW2d 16 (1997). The prosecutor must demonstrate by a preponderance of the evidence that the statement was voluntary. *People v Daoud*, 462 Mich 621, 634; 614 NW2d 152 (2000).

> In determining voluntariness, the court should consider all the circumstances, including: "[1] the age of the accused; [2] his lack of education or his intelligence level; [3] the extent of his previous experience with the police; [4] the repeated and prolonged nature of the questioning; [5] the length of the detention of the accused before he gave the statement in question; [6] the lack of any advice to the accused of his constitutional rights; [7] whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; [8] whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; [9] whether the accused was deprived of food, sleep, or medical attention; [10] whether the accused was physically abused; and [11] whether the suspect was threatened with abuse." *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988). No single factor is determinative. [*People v Sexton (After Remand)*, 461 Mich 746, 753; 609 NW2d 822 (2000).] "The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made." *Cipriano*, *supra* at 334. [*Tierney*, 266 Mich App at 708.]

Martin contends that Investigator Todd made several false statements to him during the interview. Investigator Todd admitted lying to Martin about (1) the police having a recording that showed his involvement in the shooting, (2) his accomplice implicating him, (3) other investigations of Martin, (4) defendants getting special treatment in Wayne County premised on race, and (5) Investigator Todd once making a poor decision by beating someone up who had

-4-

threatened his child. Martin also complains that Investigator Todd used Martin's own children to convince Martin that he should cooperate with the police and minimize his role in the offense. He further claims that Investigator Todd made promises of leniency by telling him that he would be an advocate for him with the prosecutor.

"The fact that the police lie to a suspect about the evidence against him or her does not automatically render an otherwise voluntary statement involuntary." *People v Perkins*, 314 Mich App 140, 155; 885 NW2d 900 (2016), vacated in part on other grounds and special panel convened 314 Mich App 801 (2016), superseded in part on other grounds by *People v Hyatt*, 316 Mich App 368 (2016), aff'd in part and rev'd in part on other grounds by *People v Skinner*, 502 Mich 89; 917 NW2d 292 (2018). "Instead, misrepresentation by the police is just one factor to be considered; the focus remains the totality of the circumstances." *Perkins*, 314 Mich App at 155. Similarly, "a promise of leniency is merely one factor to be considered in the evaluation of the voluntariness of a defendant's statements." *People v Shipley*, 256 Mich App 367, 373; 662 NW2d 856 (2003), quoting *People v Givans*, 227 Mich App 113, 120; 575 NW2d 84 (1997).

After reviewing the record, we are satisfied that any lies by Investigator Todd did not overpower Martin's free will to make a statement voluntarily. Investigator Todd did not otherwise threaten or coerce Martin to give a statement. Furthermore, while Investigator Todd offered to act as an advocate for Martin with the prosecutor's office, he did not make any promises about how Martin would be treated by the judicial system; he only advised him that cooperating would put him in a better light. Investigator Todd also told Martin that he had to tell the truth and make his own statement. The totality of the circumstances support the trial court's ruling that Martin's statement was voluntarily given. Accordingly, the trial court did not err by denying Martin's motion to suppress his statement.

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL

Martin next argues that he is entitled to a new trial because his defense attorney was ineffective. He did not raise an ineffective-assistance claim in the trial court, and this Court denied his motion to remand.[3] Our review of this issue is limited to errors apparent from the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

"Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions." *People v Schrauben*, 314 Mich App 181, 189-190; 886 NW2d 173 (2016). To obtain a new trial premised on ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). It is presumed that defense counsel was effective, and a defendant must overcome the strong presumption that counsel's performance was sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

---

[3] *People v Martin*, unpublished order of the Court of Appeals, entered May 17, 2019 (Docket No. 344884).

"[D]ecisions regarding what evidence to present and which witnesses to call are presumed to be matters of trial strategy, and we will not second-guess strategic decisions with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996). However, counsel may be found ineffective for the strategy employed when it is not a sound or reasonable strategy. *People v Dalesandro*, 165 Mich App 569, 577-578; 419 NW2d 609 (1988).

The burden of establishing the factual predicate for a claim of ineffective assistance is on the defendant. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). The trial court's factual findings are reviewed for clear error. *People v Dendel*, 481 Mich 114, 124; 748 NW2d 859 (2008). However, regard shall be given to the special opportunity of the trial court to assess the credibility of the witnesses that appeared before it, and those credibility determinations are also reviewed for clear error. *Id*. at 130. A finding is clearly erroneous if, although there is evidence to sustain it, the appellate court is left with the definite and firm conviction that a mistake has been made. *Id*.

First, Martin argues that defense counsel was ineffective for not objecting to Tiffany Bass's testimony that Donzell Barrow told her that he and "Thomas"[4] shot Howard. Bass also testified that Barrow told her that "Thomas" sent someone to Howard's neighbors' home to see if their surveillance cameras recorded the shooting. Martin contends that counsel should have objected to the testimony on the ground that the introduction of Barrow's statement violated Martin's constitutional right of confrontation under *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004). We disagree.

In *People v Garland*, 286 Mich App 1, 10; 777 NW2d 732 (2009), this Court explained:

> Both the United States and Michigan constitutions guarantee a criminal defendant the right to confront the witnesses against him or her. US Const, Am VI; Const 1963, art 1, § 20. To preserve this right, testimonial hearsay is inadmissible against a criminal defendant unless the declarant is unavailable at trial and the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, *supra* at 68; *People v Lonsby*, 268 Mich App 375, 377; 707 NW2d 610 (2005). However, if the hearsay is nontestimonial, the Confrontation Clause does not restrict state law from determining admissibility. *Crawford*, *supra* at 68.

> Statements are testimonial if the "primary purpose" of the statements or the questioning that elicits them "is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006).

---

[4] Although Bass did not identify Martin as the person she referred to as "Thomas," other evidence supported an inference that this person was Martin.

-6-

Bass testified that Barrow made the statements after she told him about the Brace Street shooting. There was no questioning related to criminal prosecution that elicited Barrow's statements. Furthermore, statements are nontestimonial where they are informally made to an acquaintance. *People v Taylor*, 482 Mich 368, 378; 759 NW2d 361 (2008). Accordingly, the statements do not qualify as testimonial. Therefore, defense counsel was not ineffective for failing to object on the basis of *Crawford*.[5]

Next, Martin submits that defense counsel was ineffective for stipulating to Martin's telephone number at the time of this shooting. That telephone number was used to show that Martin was in contact with Rosemond just before and after the shooting, and that Martin's phone connected to a cell tower near the location of the shooting near the time it occurred. The stipulation relieved the prosecution of its burden to introduce evidence on this subject. Curiously, Martin did not dispute that it was his phone number at the time of the stipulation. Moreover in light of Martin's claim that he did not participate in the shooting, he disputed the import of the prosecutor's reliance on his phone number, whether correctly identified or not. Therefore, Martin has not demonstrated that he was prejudiced by counsel's stipulation.

Martin also submits that defense counsel was ineffective for not requesting lesser-offense instructions on second-degree murder and voluntary manslaughter. We again disagree. The decision whether to request a lesser-offense instruction is a matter of trial strategy. *People v Robinson*, 154 Mich App 92, 93-94; 397 NW2d 229 (1986). In this case, the defense strategy was to attack the evidence of Martin's involvement in the offense. Defense counsel challenged the veracity of Martin's statement to Investigator Todd, arguing that the jury should disbelieve that Martin provided the statement or that it was trustworthy. Counsel otherwise argued that the evidence did not establish that Martin was involved in the offense. In light of the defense theory, it was not objectively unreasonable for defense counsel to forgo a lesser-offense instruction in pursuit of an all-or-nothing verdict. A lesser-offense instruction would have been inconsistent

---

[5] Alternatively, Martin alleged that the statements were inadmissible hearsay. We again disagree. MRE 804(b)(3) provides a hearsay exception for statements against the declarant's penal interest. The rule provides an exception to the general prohibition against hearsay, MRE 802, for "[a] statement which was at the time of its making . . . so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." MRE 804(b)(3). Barrow's statements admitted his participation in a shooting. His statements were clearly against his penal interest, and a reasonable person would not have made them unless he believed they were true. His statements implicating "Thomas," his accomplice, were also admissible under this exception because they were made as part of a "narrative of events" discussing Barrow's participation in the event, which made the entire statement admissible under MRE 804(b)(3). See *Taylor*, 482 Mich at 378-380. Arguably, Barrow would have been deemed unavailable as a witness because of his privilege against self-incrimination. See MRE 804(a)(1). Accordingly, Martin has not demonstrated that defense counsel was ineffective for failing to object to Bass's testimony on hearsay grounds.

with the defense theory that Martin did not participate in any crime. Accordingly, Martin has not overcome the presumption of reasonable trial strategy.

Next, Martin argues that defense counsel was ineffective for agreeing to the dismissal of three jurors for cause after the jury had been selected and sworn, but before the jury heard any evidence. Because the dismissal of the jurors occurred before any evidence was presented, the trial court was permitted to replace the dismissed jurors. *People v Grabowski*, 12 Mich App 672, 674-676; 163 NW2d 449 (1968). Even if Martin's counsel could have objected to the dismissal of some of the jurors on the ground that cause for their dismissal was lacking, Martin has not shown that he was prejudiced. He had no right to have the case heard by the jurors in question. The court replaced the dismissed jurors with three other jurors and there is nothing to suggest that the new jurors could not be fair and impartial. Martin's right to a fair trial was not adversely impacted by counsel's initial decision to agree to the dismissal of the three jurors for cause and subsequent protest of the trial court's denial of his motion for mistrial.

Martin also argues that defense counsel was ineffective for not objecting to the prosecutor's closing argument. As discussed in Part II(A)(4), *infra,* the prosecutor's arguments were based on the evidence and reasonable inferences that could be drawn from the evidence. Therefore, any objection by defense counsel would have been futile. Counsel is not ineffective for failing to make a futile objection. *People v Knapp*, 244 Mich App 361, 386; 624 NW2d 227 (2001).

Martin next contends that defense counsel was ineffective for not moving to suppress his statement to Investigator Todd on the additional ground that the interview was improper under *Arizona v Roberson*, 486 US 675; 108 S Ct 2093; 100 L Ed 2d 704 (1988). Once a defendant invokes his right to counsel during custodial interrogation, that request must be honored "unless the accused himself initiates further communication, exchanges or conversations with the police." *People v Paintman*, 412 Mich 518, 525; 315 NW2d 418 (1982), quoting *Edwards v Arizona*, 451 US 477, 484; 101 S Ct 1880; 68 L Ed 2d 378 (1981). That rule also applies when the police subsequently attempt to question a defendant regarding a matter unrelated to the initial interrogation and the questioning officer is unaware that the defendant had previously ended the interrogation by requesting counsel. *Roberson*, 486 US at 687-688.

The police initially brought Martin into custody for charges of carjacking, armed robbery, and assault with intent to commit great bodily harm. Martin contends that he was interrogated in the carjacking case, but the interview ended when he invoked his right to counsel. He asserts that the invocation of the right to counsel in the carjacking case precluded the interrogation for the Howard murder. However, the motion to suppress filed by defense counsel did not argue that Martin's statement should be suppressed under *Roberson*, although counsel acknowledged that Martin had previously been charged with carjacking, armed robbery, and assault with intent to commit great bodily harm. That case was subsequently dismissed, but the matter was still under investigation. Although Martin claims that he invoked his right to counsel to end an interrogation in the carjacking case, he relies only on his affidavit in support of that claim. He has not produced any documents from the carjacking case to show that he was interviewed in that case, or that the interview ended because he invoked his right to counsel. Without corroboration for his claim that he previously invoked his right to counsel to end any interview in the carjacking case, it is not reasonably probable that the outcome of the suppression hearing would have been different if counsel had raised this issue. Martin's affidavit alone does not support his request that this matter

be remanded for an evidentiary hearing on this issue. See *People v McMillan*, 213 Mich App 134, 141-142; 539 NW2d 553 (1995).

## 4. PROSECUTORIAL MISCONDUCT

Martin argues that he is entitled to a new trial because the prosecutor made several statements during closing argument that were not supported by the evidence, or which improperly urged the jury to rely on the prestige of the prosecutor's office, rather than the evidence, to obtain a conviction. We disagree.

Martin concedes that there was no objection to any of the challenged remarks at trial, leaving these claims unpreserved. When prosecutorial statements are not challenged with contemporaneous objections and requests for curative instructions, this Court reviews the issue for plain error affecting the defendant's substantial rights. *People v Solloway*, 316 Mich App 174, 201-202; 891 NW2d 255 (2016). Moreover, this Court will not reverse if the prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction from the trial court. *People v Williams*, 265 Mich App 68, 70-71; 692 NW2d 722 (2005), aff'd 475 Mich 101 (2006). Defendant fails to show plain error affecting his substantial rights.

Prosecutorial misconduct[6] issues are evaluated on a case-by-case basis. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). To obtain relief for a claim of prosecutorial misconduct, a defendant must demonstrate that he was denied a fair trial. *Solloway*, 316 Mich App at 202. When a claim of misconduct is premised on a prosecutor's statements, the remarks must be examined in context to determine if the defendant was denied a fair and impartial trial. *Mullins*, 322 Mich App at 172. The statements must be assessed in light of the defense arguments and the relationship between the comments and the evidence presented at trial. *Id.* With regard to argument, the prosecutor has great latitude and is free to argue the evidence and all reasonable inferences arising from the evidence as it relates to the theory of the case. *Id.* A prosecutor is not required to phrase his or her arguments in the blandest of terms, but may use "hard language" when the evidence supports it. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995); *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). However, a prosecutor may not ask the jury to convict a defendant on the basis of the prosecutor's personal knowledge, or the prestige of his or her office. *Matuszak*, 263 Mich App at 54-55.

Martin first argues that the prosecutor improperly argued that Martin acted as the point man for and took orders from Rosemond. However, the prosecutor's theory of the case was that Rosemond and Martin were working in concert, and that they killed Howard in retaliation for the shooting of Rosemond approximately a week earlier. Telephone records showed that Rosemond and Martin communicated with each other shortly before and after the shooting. The prosecutor

---

[6] Although defendant characterizes the prosecutor's questions and statements as misconduct, this Court recently explained that a fairer label for most claims of prosecutorial misconduct would be "prosecutorial error," because only the most extreme and rare cases rise to the level of "prosecutorial misconduct." *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). However, we will use the phrase "prosecutorial misconduct" because it has become a term of art in criminal appeals. *Id.*

also relied on Martin's statement, in which Martin told the police that he received a call from Rosemond, went to Rosemond's house to obtain a gun, and then went to Howard's house. This evidence supported an inference that Rosemond, who had been shot earlier, had a motive to seek revenge, and that Martin shot Howard at Rosemond's request. Thus, the prosecutor's argument was premised on the evidence and reasonable inferences arising therefrom and was not improper.

Martin also challenges the prosecutor's remarks that suggested that Martin killed Howard pursuant to a contract. However, these remarks, when reviewed in context, challenged the veracity of Martin's custodial statement, in which he claimed that he went to Howard's home merely to talk to Howard, whom Martin believed had threatened his family. The prosecutor argued that Martin offered that explanation in an effort to mitigate his responsibility, only because he believed that his identity was recorded on a neighbor's surveillance system. Again, it was the prosecutor's theory that Martin shot Howard deliberately, as part of a premeditated plan to seek revenge for the earlier shooting of Rosemond. Evidence was presented that Howard was ambushed in his driveway when he arrived home shortly before 1:30 a.m., that Howard was shot during a barrage of gunfire from two (and possibly three) gunmen, and that Howard received 11 gunshot wounds. Again, the evidence supported an inference that Martin was brought into this matter by Rosemond after Rosemond had been shot by Howard's group, and that Martin's role in the offense was similar to that of a hitman.[7]

Next, Martin argues that the prosecutor wrongly argued that Curtis Bailey was the lookout and getaway driver in Howard's shooting death. During his interview, Martin told Inspector Todd that he went to Rosemond's house on the night of the shooting by getting a ride from an Uber driver. Witnesses described seeing three persons fleeing from the shooting scene. Telephone records were introduced to show the locations and movements of several different suspects, including Bailey. The records showed that Bailey communicated with Martin near the time of the shooting, at which time Bailey's phone was near the area of the shooting. After the shooting, Bailey's phone began connecting with cell towers moving away from the scene and toward Martin's home. It was reasonable for the prosecutor to infer from this evidence that Bailey was involved in this matter as a lookout, as the others waited for Howard to arrive home, and that Bailey later gave Martin a ride back to his house.

Martin also argues that there was no evidence to support the prosecutor's argument that Bass was fearful of Martin, which is why she did not identify him in court. A prosecutor properly may argue from the facts whether a witness is credible or not worthy of belief. *Howard*, 226 Mich App at 548. The challenged comments were directed at the credibility of Bass's testimony that she could not identify Martin as the person she knew only as "Thomas," and they were premised on Bass's demeanor as she testified. It was not improper for the prosecutor to ask the jury to consider Bass's demeanor while testifying when evaluating the credibility of her testimony on that point.

---

[7] Martin also argued that it was improper for the prosecutor to argue that the co-defendants were involved in an organization that plotted revenge. However, this argument was part of *defense* counsel's closing argument. Moreover, it was not improper, but an inference from the evidence under the circumstances.

In sum, Martin has not demonstrated that the prosecutor's arguments were not supported by the evidence and reasonable inferences that could be drawn from the evidence. Moreover, the challenged remarks did not involve any attempt to obtain a conviction on the basis of the prestige of the prosecutor's office. Accordingly, the remarks do not constitute plain error. Furthermore, any perceived prejudice could have been cured by an appropriate instruction upon timely objection. Indeed, even without an objection, the trial court instructed the jury that "the lawyers' statements and arguments are not evidence" and it "should only accept things the lawyers say that are supported by the evidence." These instructions were sufficient to protect Martin's substantial rights.

## B. MARTIN'S STANDARD 4 BRIEF

Martin raises additional issues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

### 1. PROSECUTORIAL MISCONDUCT

Martin submits that the prosecutor mischaracterized the evidence when arguing that the person who Bass knew as "Thomas" lived at a house associated with Martin, thereby supporting an inference that "Thomas" was defendant—Thomas Martin. Because there was no objection to the challenged argument at trial, this issue is unpreserved and our review is limited to whether plain error affecting substantial rights occurred. *Solloway*, 316 Mich App at 202.

As indicated earlier, prosecutors are permitted to argue the evidence and reasonable inferences arising from the evidence in support of their theory of the case. *Bahoda*, 448 Mich at 282. During her testimony, Bass described the house where the person she knew as "Thomas" lived. The prosecution also presented evidence of the particular address that the police had associated with Martin, and testimony indicated that this location matched the description of the house provided by Bass. Because evidence was introduced that the particular house was associated with Martin, the prosecutor did not mischaracterize the evidence. Further, the prosecutor was permitted to infer that because the house described by Bass matched the description of the house associated with Martin, the person Bass knew as "Thomas" was indeed defendant—Thomas Martin. Accordingly, there was no error.

### 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Martin also raises several additional claims of ineffective assistance of counsel. Because these claims were not raised below and this Court denied Martin's pro se motion to remand,[8] our review of this issue is limited to errors apparent from the record. *Matuszak*, 263 Mich App at 48.

Martin argues that defense counsel was ineffective for not objecting to the prosecutor's mischaracterization of the evidence regarding Martin's residential address. As discussed earlier,

---

[8] *People v Martin*, unpublished order of the Court of Appeals, entered August 19, 2019 (Docket No. 344884).

the prosecutor did not mischaracterize this evidence. Because any objection on this basis would have been futile, counsel was not ineffective for failing to object. *Knapp*, 244 Mich App at 386.

Martin also argues that defense counsel was ineffective for not objecting to the officer-in-charge's testimony regarding Martin's address on the grounds that it involved inadmissible hearsay and violated his rights under the Confrontation Clause. Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). The officer testified that he obtained an address associated with Martin during his investigation, but he did not testify regarding any out-of-court statement offered to prove that matter. Thus, there was no hearsay testimony. Further, because there was no hearsay, and Martin had the opportunity to confront the officer regarding the basis for his association of the address to Martin, Martin's rights under the Confrontation Clause were not violated. *Crawford*, 541 US at 68. The testimony about a Google map also was not objectionable. The map was subject to judicial notice under MRE 201(b)(2), which provides that a court can take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Accordingly, any objection by counsel on the foregoing grounds would have been futile. Again, counsel is not ineffective for failing to make a futile objection. *Knapp*, 244 Mich App at 386.

Martin also argues that defense counsel was ineffective for not objecting to Sergeant Matthew Fulgenzi's testimony about other suspects in the Lauder Street shooting in which Rosemond was injured, including his opinion that there was insufficient evidence to obtain a warrant for one suspect, Markese Jackson. Martin argues that this testimony was objectionable because Sergeant Fulgenzi was not qualified as an expert to render an opinion.

MRE 702 allows a person qualified as an expert by knowledge, skill, experience, training, or education to testify in the form of an opinion if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. Contrary to what Martin argues, Sergeant Fulgenzi was not asked to provide an expert opinion under MRE 702. Rather, he was questioned about his personal involvement in the investigation of the Lauder Street shooting. His testimony was admissible under MRE 701, which provides that "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." The defense argued that Howard's statement to the police that "Jay" shot him referred to Jackson, not Martin. The prosecution's theory of the case was that Howard's shooting was related to the Lauder Street shooting, which Sergeant Fulgenzi had investigated. His opinion that there was insufficient evidence to submit a warrant for Jackson was rationally based on his personal knowledge of that investigation and was helpful to the jury's understanding of why the police focused on Martin as a suspect in this case and not Jackson. Martin has failed to show that any objection to this testimony would not have been futile.

Martin also complains that Sergeant Fulgenzi's testimony may have caused the jury to wrongly apply the lesser legal standard for obtaining a warrant instead of the standard of proof beyond a reasonable doubt. However, Sergeant Fulgenzi did not testify or explain the legal standard for obtaining a warrant. Moreover, it is undisputed that the trial court properly instructed

-12-

the jury that the prosecution was required to prove Martin's guilt beyond a reasonable doubt. The jury is presumed to have followed the trial court's instructions. *Mullins*, 322 Mich App at 173.

Martin also argues that defense counsel was ineffective for not objecting to Investigator Todd's testimony that referenced "another crime" that Martin and Barrow may have committed. Although Investigator Todd's reference to "another crime" may have been objectionable, the testimony was volunteered and the trial court immediately intervened to foreclose further testimony on the subject. Defense counsel may have reasonably declined to object as a matter of trial strategy because (1) the trial court's intervention foreclosed further discussion of the matter, and (2) an objection may have only highlighted the testimony for the jury. Counsel was also aware that the jury already knew that Martin had a prior felony conviction because he stipulated to that fact for purposes of the felon-in-possession charge. Under these circumstances, defendant has not demonstrated that it was objectively unreasonable for counsel to decline to object.

### 3. HEARSAY

Martin argues that the trial court erred by admitting Howard's hearsay statement to his cousin, made the day before he was shot, that he feared Rosemond and intended to move away. We review a trial court's decision to admit evidence for an abuse of discretion, but any preliminary questions of law affecting admissibility are reviewed de novo. *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003).

The trial court admitted the statement under the hearsay exception for statements of the declarant's then existing state of mind, MRE 803(3). In this case, the prosecution offered Howard's statement to show that he feared Rosemond. However, Howard's state of mind was not at issue in this case. Martin's defense at trial was that he was not involved in the shooting. Rosemond too claimed that someone else (Jackson in particular) was responsible for the shooting. The victim's state of mind is not relevant in a homicide case unless self-defense, suicide, or accidental death are raised as defenses to the crime. *People v Smelley*, 285 Mich App 314, 325-327; 775 NW2d 350 (2009), vacated in part on other grounds 485 Mich 1023 (2010). Therefore, we agree with Martin that Howard's statement was erroneously admitted.

However, we conclude that the error was harmless. A preserved, nonconstitutional error is not ground for reversal unless after examining the entire record, it shall affirmatively appear more probable than not that the error was outcome-determinative. *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). The statement attributed to Howard only expressed his fear of Rosemond. It did not directly implicate Martin, nor did it have any tendency to make it more probable that Martin was involved in the offense. The prosecution relied on other evidence to prove Martin's involvement in the shooting, notably Bass's testimony, Martin's own statement, and cell phone analysis. Accordingly, in light of the entire record, it does not affirmatively appear more probable than not that the erroneous admission of Howard's statement was outcome-determinative, particularly considering that the statement did not even implicate Martin.

### C. MARTIN'S SUPPLEMENTAL STANDARD 4 BRIEF

-13-

Defendant first contends that he was deprived of the right to be present and to have counsel at a critical stage when a discussion occurred with three jurors outside of defendant's presence. We disagree.

A defendant has a constitutional and statutory right to be present at any stage of trial where his substantial rights might be adversely affected. *People v Powell*, 303 Mich App 271, 275; 842 NW2d 538 (2013); see also 768.3. A complete and total deprivation of the right to counsel at a critical stage constitutes structural error warranting automatic reversal. *Id*.

After the jury was selected and sworn, a juror asked to speak to the trial court. Because the entire jury was in the courtroom, the trial court agreed to meet with the juror, the attorneys, and the court reporter in the jury room. However, two additional jurors then also asked to speak to the judge. One juror indicated that he was convicted of second-degree criminal sexual conduct. Defense counsel agreed that this juror was disqualified from service. Two additional jurors indicated that they did not have transportation to court and did not have financial resources to attend trial. Juror H indicated that her mother was able to drive her to court that day because she had the day off. However, juror H's mother would be unable to bring her to any other court dates, and juror H did not have financial resources to appear. Juror H was asked to step outside. The prosecutor questioned how juror H would react to being forced to appear and its impact on the trial. Juror D indicated that she had children and needed to pick them up every day at 3:40 p.m. Although she was no longer homeless, all of her money went toward her bills. She had to borrow money to even appear that day for jury duty. When questioned why juror D did not raise the issue of hardship earlier, she indicated that it was her first time at jury duty, and she was unaware of the process. Both the prosecutor and defense counsel agreed that the jurors should be dismissed for cause. The trial court returned to the courtroom with the attorneys and excused the remaining 11 jurors. The trial court then announced that the three jurors would be dismissed for cause, and both attorneys did not object to the trial court's statement. Following an extensive sidebar, the trial court stated that the jury trial would resume the next day with selection of three additional jurors, and the attorneys agreed to that procedure.

However, the next day, the trial court questioned whether defendant would stipulate to having the 11 jurors reach a verdict. Defendant refused to agree and also objected to the dismissal of the jurors for the lack of a ride to court. However, the trial court noted that it was apparent that juror D's issues were not limited to childcare issues, but suffered from economic depression. Nonetheless, defendant also refused to agree to continuing jury selection to replace the three jurors. At that time, defense counsel indicated that he had conducted additional research and requested a mistrial. Further, he advised that he erroneously agreed that good cause existed to dismiss those three jurors because he did not then realize that a sworn jury panel should be treated differently than an unsworn panel. Defense counsel now argued that double jeopardy applied, and dismissal of the charges was required. He submitted that when transportation issues occur, the police may provide assistance. The prosecutor opposed the request for a mistrial and application of double jeopardy. Rather, her research indicated that a juror issue that arose after a panel was sworn but before evidence was taken was remedied by selection of a new juror. The trial judge advised that he would make an inquiry about having the two jurors return. However, when proceedings resumed, the trial court concluded that three additional jurors would be selected pursuant to the *Grabowski* decision.

In light of the record, we do not conclude that defendant was denied counsel at a critical stage of the proceedings. After a juror sought to speak to the court without others present, the trial court took the juror, the attorneys, and the court reporter to the jury room to avoid tainting the other members. However, two additional jurors sought to speak to the court. When it became apparent that additional discussion was required, the trial court excused the 11 jurors and returned to the courtroom to address the jurors' issues. Although defendant contends that he was denied the right to appear at a critical stage and the right to counsel, he was ultimately apprised of what transpired and his counsel opposed the trial court's proposed disposition. Defendant was not deprived of counsel at a critical stage under the circumstances. *Powell*, 303 Mich App at 274.

Defendant contends that the dismissal of jurors violated his right not to be twice placed in jeopardy. We disagree.

A double jeopardy challenge presents a question of constitutional law reviewed de novo on appeal. *People v Ream*, 481 Mich 223, 226; 750 NW2d 536 (2008). Defendant preserved this issue for appellate review by objecting in the trial court. *People v Ackah-Essien*, 311 Mich App 13, 30; 874 NW2d 172 (2015).

Const 1963, art 1, § 15 provides that "[n]o person shall be subject for the same offense to be twice put in jeopardy."

> The Double Jeopardy Clause affords individuals "three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." [*People v Bobby Smith*, 478 Mich 292, 298; 733 NW2d 351 (2007).]

> The Double Jeopardy Clause precludes the prosecution from making repeated attempts to convict a defendant for the same offense. Once jeopardy has attached, the accused has a valuable right in having his or her trial concluded by the jury sworn to hear the case.

> Generally, jeopardy attaches in a jury trial once the jury is empaneled and sworn. Once jeopardy attaches, the defendant has a constitutional right to have his or her case completed and decided by that tribunal. "If the trial is concluded prematurely, a retrial for that offense is prohibited unless the defendant consented to the interruption or a mistrial was declared because of a manifest necessity." [*Ackah-Essien*, 311 Mich App at 31-32 (citations omitted).]

A defendant does not have a vested right to a particular juror, only the right to be tried by a fair and impartial jury. *Grabowski*, 12 Mich App at 675. After a jury is selected and sworn, but before the presentation of evidence, it may be necessary to dismiss a juror for sickness or competency, and the court may substitute a juror without dismissing the entire panel. *Id*. Although defendant essentially contends that the jurors inability to get "a ride" did not impact their competency, the trial judge stated that it was apparent that juror D's issues exceeded child care issues. The trial court's factual findings underlying the need for a mistrial and application of double jeopardy are reviewed for clear error. *People v Dawson*, 431 Mich 234, 258; 427 NW2d 886 (1988). Moreover,

-15-

an exception to the bar against double jeopardy occurs when prosecutorial or judicial errors requiring the mistrial were innocent or beyond the prosecutor's control. *Id*. at 236. Thus, even if the trial court erred in its decision to substitute the three jurors, retrial would not have been barred. *Id*. Therefore, defendant's challenge does not entitle him to appellate relief.

### III.  DOCKET NO. 346035 (DEFENDANT ROSEMOND)

### A.  SUFFICIENCY OF THE EVIDENCE

Rosemond argues that the trial court erred by denying his motion for a directed verdict. We review a challenge to the sufficiency of the evidence de novo. *People v Hammons*, 210 Mich App 554, 556; 534 NW2d 183 (1995). An appellate court's review of the sufficiency of the evidence to sustain a conviction should not turn on whether there was any evidence to support the conviction, but whether there was sufficient evidence to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). We must view the evidence in a light most favorable to the prosecution. *Id*. at 514-515. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). "Any conflicts in the evidence must be resolved in favor of the prosecution." *People v Jackson*, 292 Mich App 583, 587-588; 808 NW2d 541 (2011).

A conviction of first-degree premeditated murder requires evidence that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. Premeditation and deliberation requires sufficient time to allow the defendant to take a second look. *Id*. at 588. Premeditation and deliberation can be inferred from the surrounding circumstances, but the inferences cannot be speculative and they must have support in the record. *People v Plummer*, 229 Mich App 293, 301; 581 NW2d 753 (1998). Factors that may be considered in establishing premeditation include (1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing, including the weapon used and the location of the wounds inflicted. *Id*. at 300.

The prosecutor also argued that the evidence supported Rosemond's guilt as an aider or abettor. To find that a defendant aided or abetted a crime, the prosecution must show that (1) the crime charged was committed by the defendant or another person, (2) the defendant performed acts or gave encouragement that assisted in the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999); see also *People v Kevin Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006). An aider or abettor's state of mind may be inferred from all of the facts and circumstances. *Carines*, 460 Mich at 757. Factors that can be considered include a close association between the principal and the defendant, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *Id*. at 757-758.

Rosemond argues that the evidence was insufficient to prove his guilt of first-degree murder as an aider or abettor.[9] With respect to the first element of aiding or abetting, the evidence showed that Howard returned home late at night, was ambushed in his own driveway, and there were at least two (and possibly three) gunmen, who fired multiple rounds of gunfire, striking Howard 11 times. Howard's car and wallet were left at the scene. This evidence supported an inference that the attack was planned and that the shooters acted with a premeditated intent to kill.

With respect to the third element of aiding or abetting, the evidence was largely circumstantial. The prosecution presented evidence that Rosemond had been shot in a separate shooting approximately a week earlier, in which persons associated with Howard were suspects. In addition, Rosemond had a falling out with Howard after that shooting. This evidence supported an inference that Rosemond had a motive to commit the offense as revenge for the prior shooting and intended Howard's shooting death.

Sufficient evidence also enabled the jury to find that Rosemond, if not a guilty principal, performed acts or gave encouragement that assisted in the commission of the crime. Specifically, evidence was presented that Martin was one of the shooters, and that Martin and Rosemond communicated with each other just before and after the shooting. Moreover, according to Bass, just after the shooting, Rosemond received a telephone call, which telephone records indicated came from Martin, in which the caller used the term "checkmate." This evidence supported the theory that after Martin shot Howard, he reported back to Rosemond to confirm that Howard had been shot as planned. Even if the jury believed that Rosemond remained behind at the Redford Inn at the time of the shooting, it could still find from Rosemond's relationship and communications with Martin that Martin was acting at Rosemond's direction while Rosemond attempted to establish an alibi for his own whereabouts at the time of the shooting. Accordingly, viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find that Rosemond was guilty under an aiding or abetting theory.

Rosemond also argues that the evidence did not support the prosecution's theory that he was a guilty principal. We disagree. According to eyewitnesses, three men were seen running away from the scene, with the third man lagging behind the first two. The prosecution presented evidence that Barrow and Martin were two of the men. When the police responded after the shooting, Howard told the officers that he was shot by "Jay," which is Rosemond's nickname. This evidence allowed the jury to find that the three participants were Martin, Barrow, and Rosemond. Further, ballistics evidence indicated that at least two, and possibly three, firearms were involved. Thus, viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find that Rosemond was a guilty principal.

Accordingly, the trial court did not err by denying Rosemond's motion for a directed verdict.

---

[9] Rosemond erroneously asserts that Barrow and Martin both pleaded guilty without indicating that Rosemond was involved. Martin was convicted at a jury trial and Barrow had not been charged in this case as of the date of Rosemond's trial.

## B. JURY INSTRUCTIONS

Rosemond argues that the trial court erred by instructing the jury that a guilty verdict must be unanimous, but the jury was not required to unanimously agree on a theory supporting Rosemond's guilt. We review this preserved claim of instructional error de novo by considering the instructions as a whole to determine whether any error occurred. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). A trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007).

In support of its decision to give the disputed instruction, the trial court relied on *People v Smielewski*, 235 Mich App 196, 200-209; 596 NW2d 636 (1999), in which this Court held that the requirement of jury unanimity does not require that all jurors unanimously agree on the prosecution's theory of guilt when a defendant is charged with being either a principal or an aider or abettor. In that case, the trial court gave the following instruction:

> You may convict the defendant of armed robbery if you find either that he himself robbed [the victim] or assisted another person in committing that crime. You do not have to agree whether he was the person who actually confronted the victim or was an aider and abettor, so long as you all agree he participated in the robbery either as the robber or as an aider and abettor. [*Id.* at 201.]

After analyzing the law, this Court concluded that if the evidence supports both theories, it is not improper to instruct the jury that it need not unanimously agree on the theory of guilt in order to convict the defendant. This Court explained:

> Turning to the question presented in this case, the evidence at trial showed two distinct possibilities: one, that defendant personally committed the armed robbery as a principal, or, two, that defendant committed the crime as an aider and abettor by acting as the getaway driver for the principal. As indicated above, the prosecutor presented ample evidence to support both theories. We conclude, therefore, that merely because the jury could find from the evidence that defendant committed the charged offense of armed robbery as a principal or an aider and abettor, a unanimity instruction was not required. If the opposite were true, a defendant could escape conviction even if he openly acknowledged that he participated in the crime—as either a principal or an aider and abettor—but the jury could not agree on which of the two roles the defendant played in the commission of the crime. Such a result defies common sense. In our opinion, if each juror found that defendant committed the crime by either of such means, each juror found that the defendant committed the crime, MCL 767.39 . . . , and the jury verdict is unanimous. Accordingly, we hold that under the facts of this case, where both theories presented by the prosecution were supported by the evidence and encompassed the commission of a single offense, the trial court's instruction to the jury was an adequate statement of the law, and defendant was not deprived of his right to a unanimous verdict. [*Smielewski*, 235 Mich App at 208-209 (footnote omitted).]

-18-

Rosemond's only argument is that the evidence was not sufficient to enable the jury to consider both theories. As discussed earlier, there was sufficient evidence to allow the jury to find Rosemond guilty either as a principal or as an aider or abettor. Because both theories were supported by the evidence, the trial court did not err by instructing the jury that it was not required to unanimously agree on which theory established Rosemond's guilt.

Affirmed.

/s/ Michael J. Kelly
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto